UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 26-mj-24 (JRT/ECW)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S RESPONSE TO** |
| vs. | ) | **GOVERNMENT'S MOTIONS TO** |
| | ) | **DISMISS AND HOLD DEADLINES** |
| NASRA AHMED, | ) | **IN ABEYANCE** |
| | ) | |
| Defendant. | ) | |

Defendant Nasra Ahmed, through undersigned counsel, hereby responds to the

Government's Motions to Dismiss (Doc. 71) and to Hold Deadlines in Abeyance Pending

an Order on the Motion to Dismiss (Doc. 70). Ms. Nasra does not object to dismissal but

requests that the charges against her be dismissed **with prejudice** rather than without

prejudice. Ms. Nasra does not object to the government's request to hold deadlines in

abeyance pending the Court's order to dismiss.

## I.    THE COURT SHOULD DISMISS WITH PREJUDICE.

The government has requested that this case be dismissed "without prejudice"

pursuant to Fed. R. Crim. P. 48(a). In response to the government's misconduct and

failure to follow its obligations, and to avoid the potential injustice of refiling charges, the

Court should dismiss "with prejudice."

### A.    Factual and Procedural Background.

The government's pursuit, detention and arrest of Ms. Ahmed were part of the

federal invasion of the Twin Cities area earlier this year where thousands of ICE, CBP

and other federal agents terrorized residents under the guise of removing immigrants who were in this country illegally and who had committed serious crimes. Ms. Ahmed was one of thousands of people whom agents singled out without any substantive grounds to believe that she was not legally in the United States, and most commonly singled them out based on their racial or ethnic appearance. Indeed, Ms. Ahmed is a United States citizen based on his having born in this country, and but is of Somali origin, Black and wears a hijab.[1]  Based on her color and physical appearance, she was racially profiled by agents.

According to disclosure by the government, ICE agents on January 14, 2026 were at a residential complex in St. Paul to conduct a "knock and talk" at the home of a person whom for unknown reasons they suspected of being removeable. When agents were at this property, they saw Ms. Ahmed, stopped her and demanded her identification. Agents had no basis for stopping Ms. Ahmed and demanding her ID. As stated, she is a U.S. citizen by birth. The only plausible explanation is her skin color and religious clothing. After agents checked Ms. Ahmed's identification and realized there was no basis to harass her, one of the agents called her the N-word. Ms. Ahmed was shocked by the expression of racial hatred which she had never experienced. An argument ensued. Shortly thereafter, agents violently arrested Ms. Ahmed, and booked her into jail where she remained for more than two days. She was then released.

---

[1]  Shortly before launching "Operation Metro Surge" Donald Trump publicly called Somali Americans "garbage."

In response to the circumstances of the arrest in this case, Ms. Ahmed brought a motion to dismiss based on outrageous conduct. (Doc. 33).

On January 20, 2026, the government obtained a warrant for Ms. Ahmed's arrest. (Doc. 2). Shortly after Ms. Ahmed voluntarily self-surrendered to the U.S. Marshal on January 28, 2026 to appear in Court in response to the criminal arrest warrant and complaint in this case, the government posted on social media, namely "X", an announcement that 16 persons in Minneapolis had been arrested for violations of 18 U.S.C. § 111, named the 16 individuals, and then published their booking photographs including the photograph of Ms. Ahmed. (Declaration of Jordan S. Kushner and attached Exhibit 1 [Docs. 44 and 48). The AG's post described Ms. Ahmed and other's as "rioters." (Id). The Magistrate Judge presiding over the initial appearances in the 16 case criticized the government for publishing booking photos on the internet while the defendants are presumed innocent.[2]

On January 20, 2026, the Court has issued an order sealing the complaint and supporting affidavit which set forth the charge. (Doc. 4). The post on X was made at 12:53 am on January 28, 2026. The charges were not unsealed until Ms. Ahmed's initial appearance which took place at 1:56 pm on January 28. (Doc. 6). The government thereby violated the Court's order.

---

[2] See www.nytimes.com/2026/01/28/us/ice-protest-photos-bondi-social-media.html (copy also attached).

Despite the Court's admonition against the government publishing booking photos and unproven allegations against defendants who are presumed innocent, later in the afternoon of January 28, 2026, the Department of Homeland Security published booking photos of the 16 persons arrested, with a description of them as "Anti-ICE anarchists. (Kushner Decl., Ex. 2). The photograph of Ms. Ahmed identified her by name and stated that she was arrested for "ASSAULT, SPITTING ON OFFICER". (Id.)

The widely publicized negative and inflammatory comments about Ms. Ahmed and perp walk photos gravely jeopardize the prospect of her receiving a fair trial. Ms. Ahmed is also subject to ridicule and potential danger due to the inflammatory and improper posts. Comments by readers in response to the DHS post indeed show Ms. Ahmed personally being ridiculed.

In response to the government's improper publications of Ms. Ahmed's photographs and inflammatory statements, she brought a supplemental motion to dismiss. (Doc. 43). The motion argues that the government's conduct regarding Ms. Ahmed's arrest is improper because it violated her constitutional right to due process, professional standards of conduct, and the DOJ's own policies.

Ms. Ahmed has also brought motions to compel discovery. (Docs. 31, 47). The Court ordered the government to make certain disclosures by May 12, 2026. (Minutes, Doc. 55; Motion Hearing Transcript, Doc. 65 at 20-24). On May 12, 2026, the government filed a motion to continue its discovery deadline for 60 days, claiming that it

needed this extra two months to go through purportedly voluminous materials that were in multiple locations. (Doc. 66). In response, the Court ordered the government to file a declaration by May 14, 2026 "describing all efforts undertaken to obtain the discovery at issue and identify what discovery it has obtained to date." (Doc. 68). The government did not file any such Declaration by May 14, and has not done so to date. Instead it filed it motion to dismiss on May 14. (Doc. 69).

### B.    Argument

Dismissal with prejudice is necessary in this case in order to prevent the government from being able to avoid both its disclosure obligations and the order of the Court requiring it to account for its failure to produce timely disclosure. If the government were to dismiss and refile charges, it would effectively evade the Court's orders. Further, in light of the misconduct during the initial arrest and when Ms. Ahmed turned herself in, dismissal with prejudice is necessary to prevent further injustice.

"Generally, dismissal under Rule 48(a) is without prejudice." United States v. Garcia-Lopez, No. CR 25-437 (DWF/LIB), 2026 WL 331200, at *1 (D. Minn. Feb. 6, 2026) (citing United States v. Oliver, 950 F.3d 556, 562 (8th Cir. 2020)). "But [Rule 48]'s leave-of-court requirement serves 'to protect a defendant from prosecutorial harassment, e.g., charging, dismissing, and recharging.'" United States v. Rose, No. 26-MJ-104-NEB-EMB, 2026 WL 795010, at *1 (D. Minn. Mar. 4, 2026), report and recommendation adopted, No. 26-MJ-104 (NEB/EMB), 2026 WL 793202 (D. Minn. Mar. 20, 2026)

(quoting <u>United States v. Jacobo-Zavala</u>, 241 F.3d 1009, 1012 (8th Cir. 2001)); <u>see also</u>

<u>United States v. Salinas</u>, 693 F.2d 348, 351 (5th Cir. 1982) (prosecutorial harassment

"involves charging, dismissing, and subsequently commencing another prosecution at a

different time or place deemed more favorable to the prosecution"). In determining

whether dismissal should be with or without prejudice, the question for the Court is not

whether the Government was acting in bad faith; rather, the Court assesses the effect that

dismissal without prejudice has on the defendant. <u>United States v. Adams</u>, 777 F. Supp.

3d 185, 218 (S.D.N.Y. 2025). "Accordingly, although there remains a strong presumption

in favor of a no-prejudice dismissal, the ultimate decision in that regard depends upon the

purpose sought to be achieved by the government and its effect on the accused." <u>United

States v. Poindexter</u>, 719 F. Supp. 6, 10 (D.D.C. 1989); Garcia-Lopez, 2026 WL 331200,

at *1 (because the parties agree that the case should be dismissed, "[t]he only question

remaining for the Court is whether that dismissal should be with or without prejudice"),

The reason for the Government's motion for dismissal is a key aspect of a Rule 48

motion:

> The primary purpose of the requirement that the prosecutor obtain leave of court is to prevent harassment of a defendant by a prosecutor's charging, dismissing, and recharging the defendant with a crime. <u>Rinaldi v. United States</u>, 434 U.S. 22, 29 n. 15, 98 S.Ct. 81, 85 n. 15, 54 L.Ed.2d 207 (1977) (per curiam); <u>United States v. Ammidown</u>, 497 F.2d at 620; <u>United States v. Cox</u>, 342 F.2d 167, 171 (5th Cir.) (en banc), cert. denied sub nom. <u>Cox v. Hauberg</u>, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); <u>Woodring v. United States</u>, 311 F.2d 417, 424 (8th Cir.), cert. denied sub nom. <u>Felice v. United States</u>, 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414 (1963). Thus, to honor the purpose of the rule, the trial court at the very least must know the

> prosecutor's reasons for seeking to dismiss the indictment and the facts underlying the prosecutor's decision. <u>United States v. Salinas</u>, 693 F.2d 348, 352 (5th Cir.1982); <u>United States v. Ammidown</u>, 497 F.2d at 620.

<u>United States v. Derr</u>, 726 F.2d 617, 619 (10th Cir. 1984). Indeed, Rule 48 "contemplates public exposure of the reasons for the abandonment of an indictment, information or complaint in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors." <u>Adams</u>, 777 F. Supp. 3d at 208 (<u>quoting United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n,</u> 228 F. Supp. 483, 486 (S.D.N.Y. 1964)).

In the instant case, the Government provided no reason for its motion to dismiss the case. "While a court is still not free to substitute its judgment for that of the prosecutor, whose decision is deemed valid, [Rule 48] has the effect of granting authority to the court in exceptional cases to reject a dismissal without prejudice—which would allow re-prosecution—if this would result in harassment of the defendant or would otherwise be contrary to the manifest public interest." <u>Poindexter</u>, 719 F. Supp. at 10 (ordering dismissal with prejudice when a no-prejudice dismissal would have subjected

the defendant to "uncertainty and . . . public obloquy for an indefinite period").[3]   This is

such an exceptional case.

The government has moved for dismissal in order to avoid not only its disclosure

obligation but to evade the Court's order that the government explain its failure to meet its

obligations. It is not difficult to connect the dots between the Government's request for

dismissal and its wish to avoid compliance with the Magistrate Court's order.

At the outset of the case, officers and agents of the federal government staged

photographs of numerous protesters—including Ms. Ahmed—standing shackled next to

faceless federal agents. They then posted those photographs to millions of people in an

attempt at silencing criticism and protest in direct contravention of the First Amendment,

severely impacting Ms. Ahmed's right to a fair trial.

Based on the undisputed facts, there is a clear risk of prosecutorial harassment. Ms.

Ahmed has already been used as the DOJ's and DHS's poster child for "rioters" and

"anarchists," and has been subjected to trumped-up federal charges meant to intimidate

---

[3] As noted recently by one District Court, "Converting a dismissal without prejudice to one with prejudice does not raise the same separation-of-powers concerns as outright denial of a Rule 48(a) motion. Where a court grants the governments motion to dismiss a case, it respects the executive branch's primacy in matters of prosecutorial discretion. And deciding whether a dismissal should be with or without prejudice involves weighing considerations that, unlike the factors that are relevant to an exercise of prosecutorial discretion, are well within the judicial wheelhouse as a matter of institutional competence. . . . Accordingly, dismissal with prejudice can be an appropriate judicial remedy to vindicate Rule 48(a)'s purposes, including protecting the rights of the defendant." Adams, 777 F. Supp. 3d at 215–16.

her and others. In the absence of a Government rationale for dismissal there is more than a mere possibility that the Government could recharge Ms. Ahmed at a later time in the hopes of more favorable circumstances and more favorable outcome, including being able to take extra time to provide disclosures that it could not obtain from the Court, avoidance of a Court order that explain its delay in providing disclosures, and the possible assignment of a different magistrate judge who will be more favorable to the government regarding its disclosure obligations.

Other courts have found similarly. In Salinas, 693 F.2d at 352, the prosecutor moved for Rule 48 dismissal—as was later discovered—because he did not like the jury that was selected. A week later, the Government obtained a second indictment. Id. 353. In dismissing the second indictment, the court found that the Government had "trifled with the Rules of Criminal Procedure to harass" the defendant, and that condoning such conduct would "invite future misconduct by the Government." Id. In Derr, 726 F.2d at 618, where the Government sought dismissal under Rule 48 on the premise that dismissal would "best meet the ends of justice." Six months later, the defendant was reindicted for the same criminal conduct; the defendant moved to dismiss, contending that the initial no-prejudice dismissal was in error, which the court granted. Id. The circuit court found that "dismissing the second indictment, in effect altering the first dismissal to one with prejudice—was appropriate" because it became apparent that the Government had only moved to dismiss because it was unprepared for trial. Id. at 619.

Here, the Government's motives for seeking dismissal could not be more obvious. The Court should grant dismissal of Ms. Ahmed's charge with prejudice.

## CONCLUSION

There is no dispute that the case against Ms. Ahmed must be dismissed. For the foregoing reasons, Ms. Ahmed respectfully requests that the dismissal be **with prejudice**.

Dated:  May 23, 2026                               LAW OFFICE OF JORDAN S. KUSHNER

By s/Jordan S. Kushner
JORDAN S. KUSHNER
Attorney ID 219307
Attorney for Defendant
431 South 7th Street, Suite 2446
Minneapolis, Minnesota  55415
(612) 288-0545
jskushner@gmail.com